[No. B065128 Second Dist., Div. Two. Feb. 10, 1993.]

COUNTY OF LOS ANGELES, Plaintiff, Cross-defendant and Appellant,
v.
COUNTY OF LOS ANGELES ASSESSMENT APPEALS BOARD NO. 1,
Defendant and Respondent;
DOLLAR RENT A CAR SYSTEMS, INC., Real Party in Interest and
Respondent;
GRAND RENT A CAR CORPORATION et al., Real Parties in Interest,
Cross-complainants and Respondents.

## COUNSEL

De Witt W. Clinton, County Counsel, Albert Ramseyer and Paul I. Yoshinaga, Deputy County Counsel, for Plaintiff, Cross-defendant and Appellant.

Kelvin H. Booty, Jr., County Counsel (Alameda), James F. May, Assistant County Counsel, Thomas F. Casey III, County Counsel (San Mateo), Mary K. Raftery, Deputy County Counsel, Steven Woodside, County Counsel (Santa Clara), and Karen Heggie, Deputy County Counsel, as Amici Curiae on behalf of Plaintiff, Cross-defendant and Appellant.

No appearance for Defendant and Respondent.

Rintala, Smoot, Jaenicke & Brunswick, Peter C. Smoot and Robert W. Hodges for Real Party in Interest and Respondent.

Munger, Tolles & Olson, Gregory P. Stone, Latham & Watkins, Robert D. Crockett, Jayne Fan, O'Melveny & Meyers, Thomas M. McCoy, Marcy Jo Mandel, Rintala, Smoot, Jaenicke & Brunswick, Peter C. Smoot and Robert W. Hodges for Real Parties in Interest, Cross-complainants and Respondents.

## OPINION

**FUKUTO, J.**—The County of Los Angeles (County) seeks reversal of a judgment which denied its petition for writ of mandate against the County's assessment appeals board (Board) and awarded possessory interest tax refunds to car rental companies that operate at the three major airports within the County. The Board and the trial court rejected the County's contention that the rent-a-cars' possessory interests extend to the use of each airport generally, not simply the areas the companies occupy (principally service counters), and also disapproved the County's method of valuing the interests, by capitalizing concession fees which were based on and included enterprise income. We conclude that the trial court correctly resolved these issues, which to some extent had already been conclusively determined by another superior court judgment in 1986. The judgment consequently will be affirmed.

### FACTS

This case concerns ad valorem property tax assessments of possessory interests of four car rental companies (Dollar Rent A Car Systems, Inc. (Dollar), Grand Rent A Car Corporation (Avis), The Hertz Corporation (Hertz), and National Car Rental System, Inc. (National), hereafter collectively the rent-a-cars) at Los Angeles International Airport (LAX), Burbank-Glendale-Pasadena Airport (Burbank), and Long Beach Municipal Airport (Long Beach), for tax years 1985-1987 with respect to LAX and 1983-1987 with respect to Burbank and Long Beach. Except for Dollar with respect to Long Beach, each of the rent-a-cars has operated under "concession agreements" or (in the case of Burbank) "leases and concession agreements" (hereafter collectively the agreements) with the airports' respective owners, the City of Los Angeles, the Burbank-Glendale-Pasadena Airport Authority, and the City of Long Beach.

The agreements grant both the right to conduct a car rental business at the particular airport and the right to occupy and use certain limited portions of it, namely designated counters or booths, and, in the case of Burbank and more recently Long Beach, spaces in a "ready/return" parking lot. The Burbank agreements also grant a nonexclusive right to use common areas to be designated, as well as terminal public areas such as restrooms and waiting areas; the Long Beach agreements authorize joint use of walkways surrounding the rental booths, as well as "the use . . . on [sic] the Airport" to conduct the car rental concession. In exchange for these rights, the rent-a-cars have agreed to pay the airport authorities, subject to guaranteed minimums, 10 percent of gross receipts from all car rentals delivered in the

airports' areas, whether or not arranged through the booths. Burbank separately charges specified "rent" for the booths and lot spaces.

### 1. *The Prior Litigation.*

The present case is the second to review the propriety of the County's assessments of the rent-a-cars' airport possessory interests. In 1982 the County Assessor began assessing these interests by capitalizing the rent-a-cars' guaranteed or projected payments to the airports under the agreements, on the premise that these payments constituted "rent" for possessory interests in the airports as business premises. This change, from previous assessment of the rent-a-cars' possessory interests as comprising only their exclusive counter spaces, increased the appraised value of the interests, in the case of LAX, by roughly 5,000 to 10,000 percent.

The rent-a-cars sought redetermination of the 1982 LAX assessments before one of the County's assessment appeals boards. That board rejected the County's assertion that the taxable possessory interests extended further than the airport counters (and related telephone reservation boards), and reduced the appraisals, although not as much as the rent-a-cars had requested.

The parties then commenced a series of actions and proceedings in Los Angeles Superior Court, to review the administrative decision. The cases were ordered consolidated and tried before a single judge. (Hertz Corporation v. County of Los Angeles (Super. Ct. L. A. County, No. C537445).) The court rendered a statement of decision and judgment in favor of the rent-a-cars, embracing the following principal determinations.

(1) The rent-a-cars' possessory interests at LAX included only their counters, telephone boards, and signs, the latter two not having significant value.

(2) The taxable value of these interests was fair market rent, which would be no greater than the assessed value of airline counter space at the airport, then $15 per square foot. However, the rent-a-cars having sought reduction only to $45 per foot, they would receive that measure.

(3) The County's contrary method of valuation, based on capitalized concession fees, was invalid for two further reasons. First, it produced valuations of similarly situated, like-kind-and-character properties that widely differed between the rent-a-cars, in violation of constitutional requirements of uniform, equal taxation. Second, it improperly included income and value derived not from the property but from the rent-a-cars'

overall enterprises—i.e., business produced not by the airport counters but through advertising, goodwill, national reservation systems, and the like.[1]

The judgment, rendered August 27, 1986, ordered reduction of the LAX assessments accordingly, together with refunds.

## 2. *The Present Case.*

The County did not appeal from the 1986 judgment, and it became final. Nevertheless, the County continued to assess the rent-a-cars' possessory interests, at all three airports, using the same concepts and formulas the superior court had rejected. The County did so under the premise, as stated by its counsel at administrative hearings, that "The superior court decision is not binding authority. . . . And the assessor does not have to follow a superior court decision . . . ."

The rent-a-cars again sought reduction of their assessments, this time at all three airports, for various years including and following 1983. After an extended hearing, the Board ruled that the prior judgment controlled and preclusively determined, by collateral estoppel, the extent of the possessory interests, as well as the invalidity of the assessments because they attributed unequal values and included enterprise value. After resolving adversely to the rent-a-cars a separate issue concerning the projected duration of their interests, the Board reassessed the various values at levels amounting to only a few percent of those the County had advanced.

The County then commenced this litigation, by petition for writ of mandate (Code Civ. Proc., § 1094.5) against the Board. As real parties in interest, the rent-a-cars answered, alleging collateral estoppel by the prior judgment as a defense. All but Dollar also filed cross-complaints seeking tax refunds.

At the hearing on its motion for peremptory writ, the County argued, "[A]t some point . . . the County of Los Angeles has to be able to go to court and get review of what we consider a patently erroneous decision. . . . We're appealing the 1986 decision here today, your Honor." The court denied the County's petition, holding that the prior judgment controlled the case, and rejecting the County's contention that there had been a subsequent change in the law of possessory interests, justifying a different result.

The County moved for reconsideration, based on a new appellate decision, announced two weeks after the court's tentative decision. (*United Air Lines, Inc.* v. *County of San Diego* (1991) 1 Cal.App.4th 418 [2 Cal.Rptr.2d 212]

---

[1]The court further found that the Board's reduced valuations—roughly one-quarter of the assessor's—were unsupported by evidence.

[hereafter *United Air Lines*].) The court granted reconsideration, but adhered to its ruling denying the petition. The subsequent judgment also awarded Hertz, Avis, and National refunds, as sought by their cross-complaints, but denied, without prejudice to other tax years, their further claims that the Board had improperly judged their remaining terms of possession.[2]

### DISCUSSION[3]

As reflected above, the primary basis for both the judgment below and the Board's determinations which it affirmed was the superior court's prior, 1986 judgment, in proceedings between the same parties, rejecting the County's method of assessing the possessory interests at LAX. We therefore turn first to the question of collateral estoppel, prompted also by considerations of judicial economy that in part animate that doctrine.

■ Collateral estoppel forecloses relitigation of an issue that (1) is identical to one decided in a prior case (2) involving the same party or parties or those in privity with them and (3) which resulted in a final judgment on the merits. (E.g., *Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 813 [122 P.2d 892].) ■ In the present case the second and third criteria plainly appear: the County and the rent-a-cars all were parties to the prior litigation, which ended in a final judgment on the merits that the County chose not to appeal. The remaining inquiry concerns the identity of issues between the two cases.

The primary issue determined in the prior litigation was that the rent-a-cars' possessory interests at LAX extended to no more than their counters (and insignificant boards).[4] With respect to LAX, this issue is identical to the threshold one in the present case. Although the two cases involve different

---

[2]At the conclusion of the hearing on the writ petition, the court directed those rent-a-cars with cross-complaints pending to file a motion for summary judgment on that phase of the case. The record on appeal does not reflect any such proceedings, but the County as appellant does not complain of any such procedural omission.

[3]The County has requested judicial notice of certain congressional hearings that were conducted and published well before the hearings in the trial court, but were not offered there. We deny this untimely request to expand the record. (See Code Civ. Proc., § 1094.5, subd. (e).) The rent-a-cars' request for judicial notice of portions of the administrative record in the prior case also is denied. (See Evid. Code, § 352.)

[4]Whether this issue is one of law, as the parties assert, or more properly a mixed question of law and fact, is ultimately inconsequential. The parties cite a series of cases that characterize whether or not a taxpayer has any possessory interest as a question of law, independently reviewable regardless of its treatment at the administrative level. (E.g., *Pacific Grove-Asilomar Operating Corp.* v. *County of Monterey* (1974) 43 Cal.App.3d 675, 680-683 [117 Cal.Rptr. 874].) Collateral estoppel yet applies to "legal" issues, albeit with more qualifications than in cases of factual issues. (See 7 Witkin, Cal. Procedure (3d ed. 1985)

tax years and, for some of them, different agreements, the agreements with respect to LAX are materially identical, as is the physical situation to which they apply. The prior judgment's determination of the extent of the rent-a-cars' possessory interests at LAX therefore appears to preclude the County's present effort to claim and assess broader possessory interests there.

Apparently having abandoned the untenable position that a superior court judgment cannot be "binding" beyond its immediate case, the County propounds two principal objections to application of collateral estoppel in this context and fashion. The first is that the present case concerns later assessments, of interests for the most part created by different agreements than those at issue in the prior case. As already stated, this is not decisive. The terms of the several LAX agreements that generated the possessory interests in question are the same, as are the facilities in question, and hence so are the interests themselves. That this case involves later tax years does not separate the issues or render them nonidentical. (Cf. *Montana v. United States* (1979) 440 U.S. 147, 158-162 [59 L.Ed.2d 210, 219-222, 99 S.Ct. 970] [determination that tax was constitutional applied by collateral estoppel to subsequent suit involving different contracts].)

Second, the County seeks to invoke the doctrine that collateral estoppel as to legal issues should not apply where the content or character of the law has changed since the first judgment, so that application of it would produce obsolete, inequitable administration of the laws. (See *Montana v. United States, supra,* 440 U.S. at pp. 161-162 [59 L.Ed.2d at pp. 221-222]; *Commissioner v. Sunnen* (1948) 333 U.S. 591, 599-601 [92 L.Ed. 898, 906-908, 68 S.Ct. 715]; Rest.2d Judgments, § 28(2)(b).) In this regard, the County contends that, following the prior judgment, the law governing the issue of the extent of the rent-a-cars' possessory interests changed, favorably to the County's "airport as a whole" theory. To this alleged effect, the County relies on a Court of Appeal decision recognizing a possessory interest in commercial river-rafters' rights to use a river (*Scott-Free River Expeditions, Inc. v. County of El Dorado* (1988) 203 Cal.App.3d 896 [250 Cal.Rptr. 504] [hereafter *Scott-Free*]), another such decision concerning aircraft landing rights (*United Air Lines, supra,* 1 Cal.App.4th 418), a federal court of appeals case involving a possessory interest in an experimental fusion device (*U.S. v. County of San Diego* (9th Cir. 1992) 965 F.2d 691), and finally, the Supreme Court's depublication of a decision by the Fourth District Court of Appeal that had rejected contentions similar to the County's with respect to

Judgment, §§ 274-276, pp. 714-717.) As discussed, the County's efforts to invoke some of these restrictions are unavailing.

car rental possessory interests at San Diego's Lindbergh Field (*Hertz Corporation* v. *County of San Diego* (Nov. 28, 1990) D010144).

The County's attempted use of the last-noted depublication is baseless. (Cal. Rules of Court, rule 979(e).) And, as we shall explain shortly, none of the substantive decisions on which the County relies altered or upset the law the prior judgment followed. Accordingly, there is no impediment to applying collateral estoppel by that judgment to its full reach in this litigation. The superior court properly invoked its prior judgment to resolve adversely to the County the issue of the extent of the rent-a-cars' possessory interests at LAX for the tax years here in issue.

That determination cannot, however, extend to the similar question now posed for the first time with respect to Burbank and Long Beach, which were not subjects of the prior action. The prior action determined the extent of the rent-a-cars' possessory interests at LAX. Although the agreements between the rent-a-cars and the authorities at Burbank and Long Beach are similar to those with respect to LAX, they are not identical. Nor are the physical situations coterminous. Most prominently, the limited possessory interests which the rent-a-cars admitted at the other two airports include not only different counters at different facilities but also "ready/return" parking spaces, not implicated or addressed in the prior case. In light of these differences, the prior judgment cannot be deemed to have decided the issue of extent of possessory interests at Burbank and Long Beach.

Similarly, we do not perceive collateral estoppel to obtain with respect to the prior judgment's conclusions that the County's method of valuation case was improper. Those determinations related to the particular facts of that case, involving the 1982 LAX assessments. Although the County employed the same valuation techniques in the present case, the holding of unlawfully unequal taxation involved, and requires, comparison of particular assessments; and the finding that enterprise value was improperly included for LAX in 1982 cannot be transposed to later tax years, and operations in other locations, without evidence of the nature and source of the income and value appraised in those years.

Accordingly, the correctness of the judgment below cannot be fully decided by invocation of the prior judgment. ■ However, we are convinced that the trial judge here, like his predecessor in the prior case, correctly resolved the dispositive issues on the merits. We begin with the question of the extent of possessory interests at Burbank and Long Beach.

Possessory interest law and taxation implicate private interests in public property, which is not itself subject to property tax. The statutory definition

of a possessory interest is "Possession of, claim to, or right to the possession of land or improvements, except when coupled with ownership of the land or improvements in the same person." (Rev. & Tax. Code, § 107, subd. (a).) Other definitions add "exclusive use" to "possession." (Cal. Code Regs., tit. 18, § 21, subds. (a), (e).) In recent years there has been much litigation concerning the nature and degree of "exclusivity" of use necessary to create a possessory interest. The consistent trend of decisions has been to favor assessors' claims, by holding that possessory interests may arise from limited or concurrent exclusive uses, so long as they involve a grant of rights not shared by the general public. (See, e.g., *Freeman* v. *County of Fresno* (1981) 126 Cal.App.3d 459 [178 Cal.Rptr. 764].) But none of these holdings impairs or retreats from the basic principle that, just as possessory interests are a species of taxable property, the possession or use which grounds them means and requires not just some benefit from the public property, but physical possession or use of it.

This is the fundamental flaw in the County's claim that the rent-a-cars own or hold possessory interests "in the airport as a whole," or in their "full bundle of rights in the airport locations." Under the agreements and evidence concerning Burbank and Long Beach, as at LAX, there is no dispute that the rent-a-cars enjoy possession and exclusive use of their counters (booths) and ready/return spaces. But that is the full extent of the rent-a-cars' rights of possession or use of airport property, except in common with, and coequal to, everyone else. And this means that the County's concept of a broader possessory interest cannot be sustained.

The cases the County principally relies upon illustrate and confirm the foregoing. In *Scott-Free, supra*, 203 Cal.App.3d 896, numerous commercial river-rafters challenged the assessor's determination that their use permits, authorizing exclusive commercial use of the river, created possessory interests in it. Rejecting the challenge, the court confirmed that although the river was not taxable property, the plaintiffs' use of it was. Further, the court held, these rights of use were exclusive even though multiple, because plaintiffs, but not the public, had "a special right of access for profit." (*Id.* at p. 910.) Both of these holdings were based on the facts that the plaintiffs physically used—i.e., rafted upon—the river.

Similarly instructive is *United Air Lines, supra*, 1 Cal.App.4th 418. There, a divided court sustained a claim of possessory interests in several airlines' use of airport landing areas and related facilities (runways, wash racks, etc.), finding that the airlines were a distinct category of exclusive users (regularly scheduled passenger carriers). But both the claim of interest and the holding

concerned physical occupancy and use of specific facilities. There was no suggestion that the airlines, primary and pervasive users of the airport, held a general possessory interest in "the airport as a whole."

Thus, even apart from the issue of enterprise, the mere fact that the rent-a-cars derive customers and revenues through the gates of an airport terminus or "system" does not define the existence and extent of their possessory interest in the airport property. The County's colloquial concept of airport "use" does not account for possession or occupancy, and thus misconceives the elements and requisites of a possessory interest.[5]

In a further attempt to expand the meaning of possessory interest, the County cites *U.S.* v. *County of San Diego, supra*, 965 F.2d 691, 694, for the proposition that "[A] license or permit is a taxable possessory interest in property." This contention too is exaggerated. The quoted statement—made in a case approving taxation of a possessory interest in a fixture subject to taxpayer use—inaccurately paraphrased the California authority on which it relied, *Stadium Concessions, Inc.* v. *City of Los Angeles* (1976) 60 Cal.App.3d 215 [131 Cal.Rptr. 442]. *Stadium Concessions* recognized possessory interests in food concession stands located in sports arenas. Holding that the underlying agreement and facts satisfied the possessory interest test, including exclusive use, the court stated, "[A] concession agreement may, in a particular case, *produce* a possessory interest in public premises by the concessionaire." (*Id.* at p. 225, italics added.)[6]

That indeed has occurred under the rent-a-cars' concession agreements with Burbank and Long Beach (and LAX)—but only with respect to the property exclusively possessed and used. The further rights granted by the agreements, to do business at the airports and their environs, are not possessory interests. They are intangibles, not subject to property (possessory interest) tax. (Accord, *County of Stanislaus* v. *Assessment Appeals Bd.* (1989) 213 Cal.App.3d 1445, 1452-1454 [262 Cal.Rptr. 439].)

For related reasons, the Board and the trial court also properly disapproved the County's method of valuation, which involved capitalizing the rent-a-cars' concession fees, which are measured as a percentage of their income from their airport area operations. The County seeks to justify this approach by characterizing these payments as "rents" and asserting they

---

[5]This misconception also pervades the arguments of amici curiae in support of the County.

[6]Similarly, the portion of *Stadium Concessions* cited by the Ninth Circuit was a treatise's statement that a possessory interest may be held by " 'a *mere permittee or licensee.*' " (*Id.* at p. 222, original italics.) (But see *Kaiser Co.* v. *Reid* (1947) 30 Cal.2d 610, 619 [184 P.2d 879], cited by both *Stadium Concessions* and *U.S.* v. *County of San Diego* [a "right to use [which is] no more than a permit or license" could not give rise to a possessory interest or "be responsible for a 'property' tax"].)

were arrived at through a market process by which the rent-a-cars evaluated and agreed to pay reasonable value for their possessory interests. But this analysis again fails to differentiate between the possessory interests in question and the valuable but intangible business opportunities for which the agreements provide and the concession fees also pay.

Furthermore, the County's argument cannot overcome the evidence and determination below that the income the rent-a-cars earn at their airport locations stems largely from commercial endeavors other than their physical facilities there, i.e., enterprise. There was substantial evidence that most of the income upon which the concession fees and hence the County's valuations were based derived not from the rent-a-cars' limited physical presence at the airport but from remote and extensive business techniques to draw customers and reservations. But that is neither an accurate nor a proper basis to determine the value of taxable property, even if the property is a possessory interest lease providing for percentage rentals. (*California Portland Cement Co.* v. *State Bd. of Equalization* (1967) 67 Cal.2d 578, 584 [63 Cal.Rptr. 5, 432 P.2d 700]; *County of Riverside* v. *Palm-Ramon Development Co.* (1965) 63 Cal.2d 534, 538 [47 Cal.Rptr. 377, 407 P.2d 289].)

Accordingly, the trial court properly refused to reinstate the County's theory of valuation and its resulting assessments.[7] This does not mean that valuation of the rent-a-cars' possessory interests may not consider their airport locations, as contributing to and enhancing their independent value as business properties. (Cf. *County of Stanislaus* v. *Assessment Appeals Bd.*, *supra*, 213 Cal.App.3d at pp. 1455-1456.) That factor, which the rent-a-cars have represented their own appraisals took into account, remains appropriate for consideration in any reassessment. However, as between the possessory interest concepts and valuation methods adduced below, the Board and the trial court properly disapproved the County's.

### Disposition

The judgment is affirmed.

Boren, P. J., and Nott, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 29, 1993. Mosk, J., was of the opinion that the petition should be granted.

---

[7]We find it unnecessary to consider the constitutional question of unequal taxation.